LISA L. PETRILLO, individually and as trustee,[1] *vs.* ZONING
BOARD OF APPEALS OF COHASSET & others.[2]

No. 05-P-26.

Suffolk. October 17, 2005. - January 26, 2006.

Present: GREENBERG, BECK, & MILLS, JJ.

*Res Judicata. Administrative Law,* Preclusive effect of decision. *Zoning,* Board
of appeals: decision, Lot size, Split lots. *Practice, Civil,* Summary
judgment. *Words,* "Lot."

In a civil action to review a decision of the defendant town zoning board of
appeals (board) allowing the combination, for zoning purposes, of a lot
located within the town and an adjacent lot located outside the town and
outside the county, the judge properly ruled that principles of res judicata
did not preclude the board's determination, where the plaintiff failed to
establish that the cause of action in an earlier decision by the board (allow-
ing a special permit to alter preexisting, nonconforming uses on the lot
located within the town) was identical to the cause of action in the deci-
sion at issue, and where the plaintiff failed to establish that the issue of lot
combination was present in the earlier decision [456-459]; further, where
the town's bylaw was far from clear and unequivocal on the question
whether a lot may include an area or parcel of land not situated within the
county, the judge correctly ruled that the bylaw did not render the board's
decision erroneous [459-460]; finally, the judge properly disposed of the
case in granting, sua sponte, summary judgment in favor of the defendants,
where no unexplored factual issue existed that would have had a bearing
on the judge's decision, and where the plaintiff could not have been
surprised by the judge's action [460-461].

CIVIL ACTION commenced in the Land Court Department on
February 13, 2003.

[1]Of Villa Lisa II Realty Trust, Villa Lisa III Realty Trust, and Villa Lisa IV
Realty Trust.

[2]Philip J. Ayer and Mary Anne Kneist-Ayer, individually, and Mary Anne
Kneist-Ayer as trustee of Parson's Meadow Nominee Realty Trust (col-
lectively, the Ayers). A joint motion to substitute the Ayers for defendants
Brian Murphy and Julie Anne Murphy was allowed by the trial court judge
following the purchase of the Murphys' property by the Ayers. As the Mur-
phys owned the property in question at all times relevant, we refer to them
throughout.

The case was heard by *Alexander H. Sands, III*, J., on a motion for summary judgment.

*Eric S. Kupperstein* for the plaintiff.

*Adam J. Brodsky* for Philip J. Ayer & others.

*Kimberly M. Saillant* for Zoning Board of Appeals of Cohasset.

MILLS, J. The plaintiff, Lisa L. Petrillo,[3] opposed the proposal of her neighbors (the Murphys) to build a new single family home on their land, which is partially in Cohasset and partially in Scituate. The Cohasset building inspector denied the Murphys' application for a building permit because of uncertainty whether the Scituate land could be combined with the Cohasset land for zoning purposes, so that the resulting lot would meet the 35,000 square foot minimum lot size requirement of the Cohasset zoning bylaw (Cohasset bylaw). The Cohasset zoning board of appeals (board) reversed the building inspector's decision and approved the lot combination. The plaintiff appealed pursuant to G. L. c. 40A, § 17, and a Land Court judge upheld the board's decision. We affirm.

1. *Background.*[4] In 1996 the Murphys[5] owned a lot in Cohasset, in Norfolk County (Cohasset land), of approximately 19,000 square feet with a house and garage that predated zoning and were nonconforming as to some side yard requirements.[6] They also owned adjoining land in Scituate, in the county of Plymouth, containing approximately 27,260 square feet (Scituate land).

On March 6, 1996, the Murphys applied to the board for a special permit (special permit application) to allow reconstruction and renovation of the existing house, and relocation of a

---

[3]We refer to the plaintiff in her several capacities collectively as the plaintiff.

[4]The facts necessary for resolution of the single issue decided by the board, i.e., whether these parcels in different towns (and different counties) could be combined for zoning purposes, are taken from the judge's memorandum and appear to be undisputed.

[5]While the record discloses some confusion as to the ownership of the subject land as between the Murphys, who are husband and wife, for purposes of this opinion the specific details of their ownership are inconsequential.

[6]At all relevant times, the Cohasset bylaw required a compliant residential lot to contain a minimum of 35,000 square feet.

portion of the house as an addition to the existing garage. In their special permit application, the Murphys disclosed their ownership of the adjacent Scituate land, but the work proposed involved only the building on the Cohasset land and only that land was the subject of the application. On April 5, 1996, the board issued a decision (decision I), allowing in part, and denying in part, the requested special permit.[7]

The issue of combining the Cohasset land with the Scituate land was neither raised by the Murphys nor discussed during the public hearing on the special permit application. Nevertheless, the board stated in decision I:

> "Although the adjacent lot is owned by the same person, the adjacent lot is located in a different town (Scituate) and a different county (Plymouth) and therefore can not be combined, for zoning purposes, with the Subject Property."

The Murphys did not appeal decision I, and undertook no work pursuant to the special permit.

On September 26, 2002, the Murphys applied to the Cohasset building inspector for a permit (building permit application) on a lot combining the Cohasset land and Scituate land, so that the resulting lot, in excess of 35,000 square feet, would satisfy the 35,000 square foot minimum lot requirement under the Cohasset bylaw. The Murphys proposed to "[d]emolish house and construct new, meeting all setbacks of zoning for new construction on conforming lot." On November 6, 2002, the building inspector denied the application, citing the conflicting positions of the town's attorney and the board relating to the combination of lots in different towns and counties to satisfy the requirements of the Cohasset bylaw. On November 19, 2002, the Murphys appealed the inspector's denial to the board, which, on January 28, 2003, issued a decision (decision II), allowing the

---

[7]The board allowed reconstruction of the existing house, finding (in the language of § 8.7 of the Cohasset bylaw and G. L. c. 40A, § 6, inserted by St. 1975, c. 808, § 3) that the proposed addition would not be substantially more detrimental to the neighborhood than the existing nonconforming house, but the board denied the proposed garage work, finding that it would so increase existing nonconformity as to be substantially more detrimental to the neighborhood.

lot combination, for zoning purposes, so that lot size was no longer an issue.[8]

The plaintiff filed her appeal of the board's decision with the Land Court on February 13, 2003, asserting that decision II, on principles of res judicata, was in error because decision I had previously and adversely decided the lot combination issue and, therefore, "was . . . valid, final, and conclusive on the parties and their privies, and bars further hearing of all matters that were or should have been in the 1996 prior action." Elsewhere in her complaint, the plaintiff asserted that the Cohasset bylaw "sets forth a clear and unequivocal expression that a 'lot' is not to include 'an area or parcel of land' which is not situated in Norfolk County," providing a second basis for prohibition of the lot combination.

The plaintiff moved for summary judgment based principally upon her res judicata argument. The judge, after ruling for the plaintiff on the issue of standing, rejected the res judicata argument, because the "identity of cause of action and issues" were not the same in decision I and decision II. Thereafter, although the plaintiff had not pressed the argument in her motion, the judge ruled that the Cohasset bylaw does not explicitly prohibit the lot combination, and that "[t]he Bylaw is at worst ambiguous, in which case, deference is given to the local board's interpretation of its own bylaw[]" about the legality of the lot combination. He denied the plaintiff's motion for summary judgment, and granted summary judgment sua sponte to the Murphys on all counts of the plaintiff's complaint. The plaintiff then brought this appeal.

We affirm the judge's ruling that the board's determination in decision II was not precluded by principles of res judicata. We also hold that the judge's complete resolution of the case, on the plaintiff's motion for summary judgment, was proper.

2. *Res judicata.*[9] "The term 'res judicata' describes doctrines by which a judgment has a binding effect in future actions. It

---

[8]Decision II pertains solely to lot combination. The board did not order or authorize the building permit pending further evaluation of other setback issues not related to this appeal.

[9]The parties and the judge, relying upon *Almeida* v. *Travelers Ins. Co.*, 383 Mass. 226, 230 (1981), have assumed that issue or claim determination by a

comprises both claim preclusion (also known as 'merger' and 'bar') and issue preclusion (also known as 'collateral estoppel'). Claim preclusion 'makes a valid, final judgment conclusive on the parties and their privies, and bars further litigation of all matters that were or should have been litigated in the action.' " *Jarosz* v. *Palmer*, 436 Mass. 526, 530-531 n.3 (2002) (citations omitted). See *Kobrin* v. *Board of Registration in Med.*, 444 Mass. 837, 843-844 (2005); *Green* v. *Town of Brookline*, 53 Mass. App. Ct. 120, 123 n.5 (2001). "The invocation of claim preclusion requires three elements: '(1) the identity or privity of the parties to the present and prior actions, (2) identity of the cause of action, and (3) prior final judgment on the merits.' " *Kobrin* v. *Board of Registration in Med.*, 444 Mass. at 843, quoting from *DaLuz* v. *Department of Correction*, 434 Mass. 40, 45 (2001).

"Similarly, issue preclusion 'prevents relitigation of an issue determined in an earlier action where the same issue arises in a later action, based on a different claim, between the same parties or their privies.' *Heacock* v. *Heacock*, [402 Mass. 21, 23 n.2 (1988)]. Before precluding the party from relitigating an issue, 'a court must determine that (1) there was a final judgment on the merits in the prior adjudication; (2) the party against whom preclusion is asserted was a party (or in privity with a party) to the prior adjudication; and (3) the issue in the prior adjudication was identical to the issue in the current adjudication.' *Tuper* v. *North Adams Ambulance Serv., Inc.*, 428

---

zoning board may qualify for preclusive effect, and that decision I so qualifies. See *Ranney* v. *Board of Appeals of Nantucket*, 11 Mass. App. Ct. 112, 119 (1981). See generally *York Ford, Inc.* v. *Building Inspector & Zoning Administrator of Saugus*, 38 Mass. App. Ct. 938 (1995). For the purpose of determining the preclusive effect of decision I, we assume, without deciding, that the board is the equivalent of a "court of competent jurisdiction." *Tuper* v. *North Adams Ambulance Serv., Inc.*, 428 Mass. 132, 135 (1998), quoting from *Stowe* v. *Bologna*, 415 Mass. 20, 22 (1993). However, we explicitly do not decide that all decisions of a zoning board of appeals (on special permits, variances, or otherwise) qualify as final determinations, because of various provisions in the Zoning Act (G. L. c. 40A) that bear on finality, e.g., the automatic lapse of special permits for lack of substantial use (G. L. c. 40A, § 9, fourteenth par.); the similar lapse of variance rights, and certain provisions for reestablishment of those rights (G. L. c. 40A, § 10, third par.); and the potential for further consideration of applications, and the potential for reconsideration, upon matters initially denied (G. L. c. 40A, § 16).

Mass. 132, 134 (1998)." *Kobrin, supra* at 843. "Additionally, the issue decided in the prior adjudication must have been essential to the earlier judgment[, and i]ssue preclusion can be used only to prevent relitigation of issues actually litigated in the prior action." *Id.* at 844 (citations omitted).

As the party moving for summary judgment on res judicata grounds, the plaintiff had the burden of establishing elements of either claim or issue preclusion. See *Beals* v. *Commercial Union Ins. Co.*, 61 Mass. App. Ct. 189, 194 (2004). We are not persuaded that the plaintiff has met her burden in this case. Her claim preclusion argument, at the very least, fails because the plaintiff cannot establish that the "cause of action" in decision I is identical to that in decision II.[10] In the first case the Murphys sought a special permit to alter preexisting, nonconforming uses. The requested relief was defined by a specific provision of the Cohasset bylaw, as well as by G. L. c. 40A, § 6. The request was premised upon underlying nonconformity and certain proposed building activity that would continue the zoning nonconformity. The board, under the controlling legal principles, was required to make an objective evaluation of detrimental consequences to the neighborhood that could result from the intended work. The board had discretion to allow the work by special exception, based upon its evaluation of the continuing nonconformity.[11]

The request in the second case was an appeal from a decision of the building inspector. The proceeding before the board was based upon bylaw and statutory provisions distinct from those in decision I. No authority to create or continue zoning nonconformity was involved. Instead, the Murphys requested

---

[10]We need not discuss other factors necessary for claim preclusion. They are set out *supra*, and in *DaLuz* v. *Department of Correction*, 434 Mass. at 45.

[11]Section 8.7 of the Cohasset bylaw provides in part:

"b. The board of appeals may authorize by special permit extension of nonconforming use of a building, structure, or land; or structural alteration or enlargement of a nonconforming building, provided that the board finds that such extension, alteration, or enlargement:

1. Shall not be substantially more detrimental than the existing nonconforming use to the neighborhood; and,

2. Shall not be injurious or dangerous to the public health or hazardous because of traffic congestion or other reason."

relief similar to declaratory relief, based upon the interpretation of the bylaw. The case in decision I resembled, in form, a complaint to a trial court. The board in the second case was performing an appellate, rather than a trial, function, on an issue essentially of law. The requested relief and the law applicable to each case were not identical as between decisions I and II.

The plaintiff is similarly unsuccessful in her burden with respect to the elements of issue preclusion. At the very least, the plaintiff did not establish that the issue of lot combination, the sole issue in decision II, was present in decision I and, even if it were marginally present (an argument that we reject), that it was either essential to the decision or actually litigated in the 1996 case.

Essential to any zoning case is a defined lot of land, a use (existing or proposed), and a municipal zoning code. In the first case, the Murphys' request and the decision of the board were based upon the Cohasset land only. Although decision II states that the legal status of the combination of lots for zoning purposes was a finding in decision I, it is apparent from review of decision I that this was not the case. The board made several findings in the fifth paragraph of decision I, but a finding of "legal status" of the lots was not one of them. The judge also correctly noted that the language in decision I relative to the combination of lots appears in a different paragraph of the board's decision than its findings on the special permit application. The lot combination issue was not litigated in the first case, and the board's comment in decision I was not essential to its action on the special permit application.

3. *Lot combination under the Cohasset bylaw.* The plaintiff asserts that the Cohasset bylaw sets forth "a clear and unequivocal expression that a 'lot' is not to include 'an area or parcel of land' which is not situated in Norfolk County." Her argument is as follows. Section 2.1 of the Cohasset bylaw defines "lot" as "[a]n area or parcel of land in one ownership defined by metes and bounds or boundary lines in a *recorded* deed or *recorded* plan." The plaintiff then notes a different section of the Cohasset bylaw (section 5.3.2[ii], establishing "grandfather protection" in relationship to some 1985 area amendments), which refers to "a plan for such lot . . . *recorded* or endorsed or a

deed . . . duly *recorded* with the *Norfolk County* Registry of Deeds or Registry District of the Land Court . . . ." (emphases added).[12] From those two provisions the plaintiff draws the conclusion that a lot, for purposes of the Cohasset bylaw, may not include an area or parcel of land that is not situated in Norfolk County. It is hardly an inescapable conclusion, and the bylaw is far from clear and unequivocal on the point.

The Land Court judge correctly considered *Boulter Bros. Constr. Co.* v. *Zoning Bd. of Appeals of Norfolk*, 45 Mass. App. Ct. 283, 285 (1998), as resolving "the issue of the legality of the combination of lots in different towns and/or counties for zoning purposes where the bylaw is silent in favor of such practice."[13] The judge then concluded, we think correctly, that the Cohasset bylaw is at worst ambiguous, in which case, deference is given to the local board's interpretation of its own bylaws. See *Livoli* v. *Zoning Bd. of Appeals of Southborough*, 42 Mass. App. Ct. 921, 923 (1997) ("A reasonable interpretation of its own zoning by-law by a local board, such as a board of appeals, is entitled to deference"), citing *H.N. Gorin & Leeder Mgmt. Co.* v. *Rent Control Bd. of Cambridge*, 18 Mass. App. Ct. 272, 276 (1984). The judge correctly ruled that the Cohasset bylaw did not render decision II erroneous.

4. *Grant of summary judgment to the unrequesting defendants.* On appeal, the plaintiff asserts that her motion for summary judgment was narrow and that the motion judge abused his discretion by "exceed[ing] the scope of the motion . . . [and,] sua sponte, awarding the defendants . . . judgment as to all counts of the verified [c]omplaint." Although the plaintiff's complaint contained multiple counts (which she denominates as "causes of action"), the complaint, fairly read, asserts the issues the judge considered: (1) res judicata on the lot combina-

---

[12]Section 2.1 is devoted exclusively to definitions of "certain terms and words" for "the purpose of this bylaw," and § 2.1, first par., provides that "[t]he [word] . . . lot . . . shall be construed as though followed by the words 'or any portion thereof.' "

[13]The judge also noted that the use of land in another municipality to meet zoning requirements is permissible only if both zoning districts permit the active use. See *Boulter Bros. Constr. Co.*, *supra*. See also *Moore* v. *Swampscott*, 26 Mass. App. Ct. 1008, 1009 (1988). Here, both Cohasset and Scituate zoning bylaws zone the Murphys' land for residential use.

tion issue; and (2) whether lot combination was explicitly prohibited by the bylaw.[14]

In her supplemental documents, the plaintiff put before the judge the entire Cohasset zoning bylaw. The defendants' memorandum discussed the applicability of *Boulter Bros. Constr. Co., supra,* and the significance of language in the applicable zoning bylaws (in *Boulter Bros.,* as well as in this case) concerning lot combination. The defendants explicitly argued, in direct contrast to the plaintiff's summary judgment memorandum, that the Cohasset bylaw does not contain language explicitly excluding split lots. The Murphys filed with their opposition correspondence (verified as a letter from their lawyer to the Cohasset building inspector) discussing *Boulter Bros.,* with analysis of the sections of the Cohasset bylaw relied upon by the plaintiff for her second claim concerning the bylaw language.

The plaintiff acknowledges the judge's authority to grant summary judgment on his own initiative, but claims that the law requires that she be given fair notice and an opportunity to put her best foot forward on her second issue. She does not, however, suggest any "unexplored factual issue that would have a bearing on the [judge's] decision." *Howcroft* v. *Peabody,* 51 Mass. App. Ct. 573, 576 n.3 (2001), quoting from *Baldwin Crane & Equip. Corp.* v. *Riley & Rielly Ins. Agency,* 44 Mass. App. Ct. 29, 32-33 (1997). This, to us, is not a case where the plaintiff was "surprised by the court's grant of summary judgment." *Ibid.,* quoting from *Langton* v. *Commissioner of Correction,* 34 Mass. App. Ct. 564, 576 (1993).

The judge was correct in his disposition of the entire case on this summary judgment record. The judgment is affirmed.

*Judgment affirmed.*

---

[14]The judge's decision accurately extrapolated these essential components of the complaint.